# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JANET CHOCHOROWSKI, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08-CV-849 CAS |
| | ) | |
| HOME DEPOT USA d/b/a THE | ) | |
| HOME DEPOT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion to remand the case to state court and defendant's motion to dismiss. The motions are fully briefed and ready for decision. Because the Court concludes that it lacks subject matter jurisdiction over this matter, it will grant the motion to remand. The motion to dismiss will remain pending for resolution by the state court following remand.

**Background**.

This putative class action was originally filed in the Circuit Court of Madison County, Illinois in 2002. Plaintiff sued Home Depot, claiming that she was automatically charged for a "damage waiver" when she rented a power tiller from a Home Depot store in Missouri, even though she never agreed to purchase the waiver, which was an optional charge. In 2006, plaintiff was granted leave to amend her petition to allege a cause of action under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.025 (2000). Defendant Home Depot then moved to dismiss the case on the basis of *forum non conveniens*. The Madison County court denied the motion but the Illinois Appellate Court reversed and remanded the case with directions for the trial court to dismiss it. The

Illinois Appellate Court further directed that if plaintiff elected to file the action in another forum within six months of the dismissal, defendant must accept service of process and waive a statute of limitations defense in the other forum, and if the defendant refused to abide by those conditions, the case would be reinstated for further proceedings in Madison County. See Chochorowski v. Home Depot U.S.A, Inc., 875 N.E.2d 682 (Ill. App. Ct. 2007).

Plaintiff refiled the action in the Circuit Court of St. Louis County, Missouri on March 20, 2008. On June 11, 2008, defendant filed a Notice of Removal to this Court, which alleges that the Court has jurisdiction based on the diversity jurisdiction provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). CAFA Section 4 permits removal of class action suits in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." See 28 U.S.C. § 1332(d)(2)(A). CAFA Section 9 states that it applies to "any civil action commenced on or after the date of enactment of this Act." See Pub.L. 109-2, § 9. Defendant's Notice of Removal also asserts that the Court has original jurisdiction over this action under traditional diversity jurisdiction, 28 U.S.C. § 1332(a), because plaintiff seeks injunctive relief that would cost defendant more than $75,000 to carry out.[1]

Plaintiff moves to remand the case to state court on three grounds: (1) CAFA does not apply to this action because it applies only to actions commenced on or after February 18, 2005, and this action was commenced in Illinois in 2002 and was only refiled in Missouri in 2008 after Home Depot successfully argued that Missouri was a more convenient forum; (2) defendant has failed to prove by a preponderance of the evidence that more than $5 million is in controversy; and (3) with respect to

_____

[1]Plaintiff was charged an additional $2.50 for the Damage Waiver when she rented the power tiller.

2

traditional diversity jurisdiction, plaintiff does not seek injunctive relief and therefore defendant fails to prove that an amount in excess of $75,000 is in controversy.

**Legal Standard**.

The propriety of removal to federal court depends on whether the claim comes within the scope of the federal court's subject matter jurisdiction. See 28 U.S.C. § 1441(b). The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes are strictly construed, In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993), and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007) (quoting Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997), cert. denied, 522 U.S. 1075 (1998)). In determining whether a claim "arises under" federal law, courts must be "mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal." Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir. 2002) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

**Discussion**.

**A.  *CAFA Applies to Plaintiff's Re-Filed Action***

CAFA confers federal court jurisdiction over class actions where, inter alia, (1) there is minimal diversity, (2) the proposed class contains at least 100 members, and (3) the amount in

controversy is at least $5 million in the aggregate. <u>See</u> 28 U.S.C. § 1332(d); <u>Plubell v. Merck & Co., Inc.</u>, 434 F.3d 1070, 1071 (8th Cir. 2006).

Plaintiff's first argument in support of remand is that CAFA does not apply to this action because it applies only to actions commenced on or after February 18, 2005, and this action was commenced in Illinois in 2002 and was only refiled in Missouri in 2008 after Home Depot successfully argued that Missouri was a more convenient forum. In its Notice of Removal, defendant asserts that plaintiff's filing of her petition in Missouri state court in March 2008 "commenced" a new case, removable pursuant to CAFA. Plaintiff conversely maintains the petition represents only a continuation of her original suit, filed in Illinois in 2002, prior to CAFA's effective date.

The issue is when this case "commenced." As plaintiff asserts, CAFA applies only to class actions commenced on or after February 18, 2005. 28 U.S.C. § 1332(d); <u>Plubell</u>, 434 F.3d at 1071. Following removal, state law continues to determine procedural issues such as when the suit was commenced. <u>Plubell</u>, 434 F.3d at 1071. Under Missouri law, a case is commenced upon the filing of a petition with the court. Mo. Sup. Ct. Rule 53.01. In this case, plaintiff filed a petition in Missouri state court in March 2008.

In her motion to remand, plaintiff argues without citation to legal authority that because her case was dismissed based on *forum non conveniens* after several years of litigation, and she was ordered to refile it in a more convenient forum within six months and defendant was ordered to waive any statute of limitations defense upon a timely refiling, the petition filed in Missouri did not "commence" a new action but rather continued the former action.

Defendant responds that under the plain language of Missouri Supreme Court Rule 53.01, "[a] civil action is commenced by filing a petition with the court." Defendant asserts that because CAFA

applies to all actions commenced after February 18, 2005, it follows that CAFA applies to plaintiff's action and is a proper basis for removal. Defendant states that the prior case ended and six months later, plaintiff's actions in filing a new case, paying the filing fee, and requesting that summons be issued and defendant formally served, are consistent with the "obvious facts" that this case is distinct from the prior litigation and was "commenced" in 2008 when it was filed in Missouri.

Defendant cites Steinberg v. Nationwide Mutual Insurance Co., 418 F.Supp.2d 215 (E.D.N.Y. 2006), in support of its position. In Steinberg, the plaintiff filed a class action in state court which was removed to federal court and litigated for several years. After plaintiff's motion for class certification was granted, the defendant appealed and the Second Circuit held that the federal court lacked subject matter jurisdiction and ordered the case remanded to state court. While the remanded case was pending in state court, the plaintiff filed a class action complaint in federal court under CAFA, based on the same facts and asserting identical claims and identical relief. Id. at 218. The defendant moved to dismiss the federal complaint for lack of subject matter jurisdiction, asserting that because the federal complaint concerned the same parties, claims and relief as the state court action, it "commenced" when the remanded state case was first filed. Id. at 218. The district court rejected this argument, holding that under Rule 3 of the Federal Rules of Civil Procedure a civil action is commenced by filing a complaint with the court, and for purposes of CAFA, the plaintiff "commenced" a new and independent action when he filed the complaint in federal court. Id. at 222.

Plaintiff replies that her 2008 Missouri petition is "nearly identical" to her 2002 Illinois petition, but asserts that even if it added new theories of recovery, it does not commence a new action under CAFA. Plaintiff asserts that under Federal Rule of Civil Procedure 15(c), the amendment of a pleading relates back to the original pleading when the claim asserted in the amended pleading arose

out of the same conduct, transaction or occurrence set forth in the original pleading, citing <u>Siew Hian Lee v. CitiMortgage, Inc.</u>, 2005 WL 2456955 (E.D. Mo. Oct. 5, 2005) (Hamilton, J.). Plaintiff further asserts that the addition of an alternative theory of relief in order to sustain a claim does not commence an action under CAFA, citing <u>Judy v. Pfizer, Inc.</u>, 2005 WL 2240088 (E.D. Mo. Sept. 14, 2005) (Sippel, J.).

Plaintiff distinguishes the <u>Steinberg</u> case cited by defendant on the basis that the <u>Steinberg</u> plaintiff's action was remanded to state court, and the plaintiff then filed a separate case in federal court while continuing to litigate the remanded case in state court. Plaintiff states that while it is understandable the federal court in <u>Steinberg</u> found the second, federal action to be a newly "commenced" action, here, she has "commenced" only one lawsuit, and because the pending petition arises out of the same conduct, transaction or occurrence as set forth in the original Illinois pleading, the action was "commenced" in 2002 and CAFA does not apply.

Neither party has cited a case under CAFA that addresses the precise procedural question presented by this case, i.e., whether a case that was involuntarily dismissed and subsequently refiled in a different jurisdiction is "commenced" under CAFA at the time of refiling. Although the exact situation presented by this case does not appear to have been addressed by any other court, other cases that have addressed when an action has "commenced" under CAFA are instructive.

When a pending suit is amended in state court to add a new claim, courts generally look to state law relation-back rules to analyze whether the amendment so changes the action as to commence a new action, rather than merely continue the previously-filed suit. <u>See</u> <u>Werner v. KMPG LLP</u>, 415 F.Supp.2d 688, 700 (S.D. Tex. 2006). For example, in <u>Siew Hian Lee v. CitiMortgage, Inc.</u>, 2005 WL 2456955, at*2, Judge Hamilton held that where a motion to dismiss had been granted

6

in state court with leave to amend, the plaintiff's filing of an amended petition which asserted "additional factual allegations" that "elaborate [the plaintiff's] original claims" related back to the original, pre-CAFA petition and did not "commence" a new action under CAFA, so remand was required. Similarly, in <u>Judy v. Pfizer, Inc.</u>, 2005 WL 2240088, at *3, Judge Sippel held that the plaintiff's filing of an amended petition in state court which added four new class claims for relief did not commence a new action for purposes of CAFA, because the new claims were contemplated by the original petition and related back under Rule 15(c), Fed. R. Civ. P. <u>See also Plubell</u>, 434 F.3d at 1073-74 (amended pleading did not "commence" a new action under CAFA where the claims were exactly the same in both pleadings and the replacement class representative was a member of the putative class in the original pleading). In contrast, adding a new defendant after CAFA's effective date has been found to commence a new suit. <u>See</u>, <u>e.g.</u>, <u>Braud v. Transport Serv. Co. of Ill.</u>, 445 F.3d 801, 806-08 (5th Cir. 2006); <u>Knudsen v. Liberty Mut. Ins. Co.</u>, 435 F.3d 755, 757-58 (7th Cir.), <u>cert. denied</u>, 127 S. Ct. 79 (2006).

This case is distinguishable from both the situation of amending a petition in state court and of adding a new defendant in state court. Here, plaintiff's suit was filed in Illinois and proceeded there for several years. The case was then dismissed based on *forum non conveniens* and plaintiff refiled the action in Missouri. As a result, cases that address amendment of pleadings, such as <u>Siew Hian Lee</u> and <u>Judy</u>, are not controlling. The <u>Steinberg</u> case cited by defendant is readily distinguishable from the instant case because the plaintiff there filed a second case in federal court while his state court action was still pending, which directly leads to the conclusion that filing of the second case "commenced" a new action.

Although distinguishable from the instant case, <u>Price v. Berkeley Premium Nutraceuticals,</u> Inc., 2005 WL 2649205 (E.D. Mich. Oct. 17, 2005), is instructive. In <u>Price</u>, the plaintiffs filed a class action suit in state court which the defendant removed to federal court based on diversity jurisdiction, grounded on case law that was subsequently overturned by the Sixth Circuit. <u>Id.</u> at *2. The defendant acknowledged the change in the law and moved to remand the case but, by this time, the plaintiffs decided they preferred to remain in federal court. Rather than opposing the motion to remand, the plaintiffs filed a motion to voluntarily dismiss their complaint, based on their belief that CAFA would provide federal jurisdiction over a new complaint. <u>Id.</u> The next day, the plaintiffs filed a new complaint in federal court containing the same factual allegations as the prior dismissed case, adding two federal causes of action, and asserting diversity jurisdiction under CAFA. <u>Id.</u> The defendant moved to dismiss the newly-filed action for lack of jurisdiction under CAFA, arguing that action was "commenced" when it was first filed in state court prior to CAFA's effective date, because the new complaint related back to the date of the original complaint. The district court rejected this argument and held that it must look to the date the new case was filed, which was after CAFA was enacted. <u>Id.</u> at *4.

Although the plaintiffs' dismissal of their action was voluntary in <u>Price</u>, unlike the involuntary dismissal suffered by the plaintiff in the instant case, the case is somewhat analogous because it involves the refiling of an identical or almost identical complaint following a dismissal. The court in <u>Price</u> concluded that the refiling "commenced" a new action and that CAFA applied.

The Court must rely on state law in determining when the suit was commenced. <u>Plubell</u>, 434 F.3d at 1071. Under Missouri law, a case is commenced upon the filing of a petition with the court. Mo. Sup. Ct. Rule 53.01. In this case, plaintiff filed a petition in Missouri state court in March 2008

after suffering a dismissal of her earlier Illinois action. Under the plain language of Rule 53.01, plaintiff commenced her suit in March 2008. The Court can find no basis to conclude that the filing of the Missouri petition did not "commence" a new action within the meaning of CAFA, and this result is supported by Price. This aspect of plaintiff's motion to remand therefore fails.

### B. *CAFA Amount in Controversy*

Plaintiff's second argument in support of her motion to remand is that defendant has failed to prove by a preponderance of the evidence that more than $5 million is in controversy, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(6).

As a threshold matter, the Court must address the burden of proof on the issue of the amount in controversy. Although the Eighth Circuit has not spoken on the issue, the vast majority of other circuits have held that CAFA does not shift the burden of establishing federal jurisdiction in CAFA removal cases. The burden remains with the party choosing federal court. See, e.g., Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57-59 (2d Cir. 2006); Morgan v. Gay, 471 F.3d 469, 472-73 (3d Cir. 2006), cert. denied, 128 S. Ct. 66 (2007); Miedema v. Maytag Corp., 450 F.3d 1322, 1328-30 (11th Cir. 2006); Abrego v. Dow Chem. Co., 443 F.3d 676, 683-86 (9th Cir. 2006); and Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 447 (7th Cir. 2005); see also Ongstad v. Piper Jaffray & Co., 407 F.Supp.2d 1085, 1087-90 (D.N.D. 2006). This Court has also held that CAFA does not shift the burden from the removing party to the party seeking remand. Nowak v. Innovative Aftermarket Sys., L.P., 2007 WL 2454118, **2-3 (E.D. Mo. Aug. 23, 2007) (Webber, J.); Judy, 2005 WL 2240088 at **1-2.

The general rule in the Eighth Circuit where there is a dispute concerning the existence of the requisite jurisdictional amount is that "the party invoking federal jurisdiction must prove the requisite

amount by a preponderance of the evidence." James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005) (quoting Missouri ex rel. Pemiscot County v. Western Sur. Co., 51 F.3d 170, 173 (8th Cir. 1995)). "This rule applies even in a removed case where the party invoking jurisdiction is the defendant." Id. (citing In re Minnesota Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003)). The Court find that the preponderance of the evidence standard should apply in this case. See Nowak, 2007 WL 2454118, *3 n.2.

Plaintiff argues that the Court lacks jurisdiction because defendant has not satisfied CAFA's amount in controversy requirement. Defendant argues that the allegations of the petition, together with the calculations set forth in the Declaration of Jim Summers, are sufficient to establish that the amount in controversy exceeds $5 million, exclusive of interest and costs.

In support of its assertion that the amount in controversy has been satisfied, defendant first points to the allegations of the petition, which seeks to represent "[a]ll Home Depot customers who were charged a 'Damage Waiver" in connection with a tool . . . rental from a Home Depot rental store in Missouri." Pet., ¶ 43. Defendant asserts that from December 9, 1999 to April 21, 2008, tool rental customers in Missouri paid Home Depot approximately $2.191 million to purchase a damage waiver. Summers Decl., ¶ 7. Defendant therefore concludes that plaintiff seeks over $2.191 million in compensatory damages on behalf of the alleged class.

Defendant also states that the petition seeks an award of punitive damages, which is statutorily allowed by the MPAA, and that plaintiff's request for punitive damages must be considered in determining the amount in controversy. Defendant asserts that if plaintiff proved her allegations and claims, an award of punitive damages could reasonable exceed $4 million, which is less than two times the compensatory damages.

Defendant also states that the petition seeks an award of attorney's fees, which must be considered in determining the amount in controversy. Defendant states that under Eighth Circuit and Eastern District of Missouri decisions, a reasonable award of attorneys' fees in class action cases often ranges from 15% to 25% of the benefit to the class. Defendant concludes that if plaintiff is successful, an attorneys' fee award of $930,000 would not be legally impermissible.[2]

Plaintiff disputes defendant's calculations, asserting first that the petition expressly excludes Home Depot's new tool rental agreement and its optional "damage protection" charge, which Home Depot began offering in 2005 or 2006 (Petition, ¶¶ 37-42). Plaintiff states that the relevant damage figure is the total amount of "Damage Waiver" fees -- not "damage protection" fees -- that Home Depot collected from 1999 until 2005 or 2006 when its new tool rental agreement was implemented, and therefore defendant's compensatory damage figure is improperly inflated.

Plaintiff points out that the Summers Declaration states "in 2003 alone, tool rental customers purchased a damage waiver from a Home Depot tool rental center in Missouri on over 62,000 occasions." Summers Decl., ¶ 6. The Declaration also states, "During 2005, Home Depot's revenue from the sale of damage waivers to customers in Missouri totaled $426,073." Id., ¶ 9. Plaintiff therefore contends that defendant has the ability to determine year-by-year revenues for its sales of damage waivers, but chose not to provide that information to the Court. Plaintiff states that because the petition alleges Home Depot changed its tool rental agreement in 2005 or 2006 to stop automatically charging for Damage Waivers and instead began charging optional "damage protection fees," and plaintiff does not seek damages for the period after the Damage Waivers were dropped

---

[2]Defendant does not indicate how it calculated the estimated attorneys' fee award amount.

from the tool rental agreement, the Court is left to guess how much revenue Home Depot collected in "Damage Waiver" fees from 1999 to 2005 or 2006.

Plaintiff states that because defendant failed to provide the Court with the appropriate Damage Waiver sales information, she can only extrapolate approximate sales figures based on the Summers Declaration. Plaintiff states that if Home Depot changed its tool rental agreement in 2005, she estimates it collected a total of $1,402,000 in Damage Waiver fees in Missouri, and if it changed the tool rental agreement in 2006, she estimates it collected a total of $1,665,000, both figures well below the $2.191 million figure offered by defendant, and far below the $5 million jurisdictional threshold. Plaintiff also asserts that punitive damages are not likely to be "anything in the neighborhood of $3 million" in this case, and attorneys' fees on even a $1.7 million compensatory judgment are "not likely to be high enough to make the total amount in controversy exceed $5 million." Pl.'s Mot. to Remand at 8.

Defendant responds that its Notice of Removal and the Summers Declaration establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. Defendant contends that the petition does not disclaim all damages allegedly flowing from Home Depot's modified tool agreement, but rather challenges Home Depot's damage waiver practices in Missouri from 1999 to the present. Defendant points to plaintiff's class definition, which defines the class as "[a]ll Home Depot customers who were charged a 'Damage Waiver' in connection with a tool or equipment rental from a Home Depot retail store during the relevant period." Pet., ¶ 43. Defendant asserts that based on this definition, plaintiff makes no attempt to limit the class only to those customers who purchased a damage waiver before (or after) a particular date, but rather seeks to represent "all Home Depot customers." In addition, defendant argues the petition's claim that the

damage waiver is worthless is not limited in scope or time, and therefore must include every damage waiver purchase in Missouri from the beginning of Home Depot's tool rental program to the present.[3]

With respect to punitive damages, Home Depot reiterates that if plaintiff can prove her allegations and damages, "an award of punitive damages in this case could reasonably exceed $4 million." Def.'s Mem. Opp. at 11. Defendant also asserts with respect to punitive damages and attorneys' fees that plaintiff has failed to submit a binding stipulation to effectively disclaim damages above the jurisdictional minimum, and has failed to demonstrate to a "legal certainty" that the amount in controversy in this case does not exceed $5 million.

Plaintiff replies that the petition expressly excludes Home Depot's new tool rental agreement and its optional "damage protection" charge, which Home Depot began offering in 2005 or 2006, because the petition refers only to "Damage Waiver" fees as collected under the old agreement. With respect to the class definition, plaintiff states the class is expressly limited to persons who paid "Damage Waiver" charge, not persons who paid for Home Depot's new "damage protection" charge. Plaintiff argues that because the new rental agreement contains only a "damage protection" charge and she does not include "damage protection" in the class definition, Home Depot cannot fairly argue that this case includes consumers who paid "damage protection" charges. Plaintiff also points out that the paragraph immediately prior to the class definition specifically states, "This case does not involve any claim based upon the new rental agreement or about the optional 'damage protection' Home Depot now offers." Pet., ¶ 42. Plaintiff asserts that her petition should be read as a whole,

---

[3]In its response, Home Depot does not provide any evidence concerning plaintiff's potential damages if the petition does not include claims concerning the optional "damage protection" coverage under the new rental agreement. Defendant does assert, however, that if the Court were to accept plaintiff's estimate of compensatory damages of $1.4 million, her request for punitive damages would put the amount in controversy over $5 million. See Def.'s Mem. Opp. at 11, n.3.

and it is improper for Home Depot to attempt to isolate her class definition while ignoring the rest of the petition to reach the erroneous conclusion that the petition includes the new rental agreements with respect to either count.

Plaintiff states that defendant did not provide the Court with relevant "Damage Waiver" sales information, which would reflect the true amount in controversy, but reiterates that the compensatory damages figure of $2.191 million is too high and would more likely be closer to $1.5 million. Based on the revised damage figure, plaintiff asserts that any award of punitive damages and attorneys' fees is not likely to cause the total amount in controversy to exceed $5 million.

As a threshold matter, the Court interprets the petition to seek damages only for Missouri residents who rented a tool or equipment from Home Depot and paid the "Damage Waiver" prior to Home Depot's amendment of the rental agreement. The petition defines the "Damage Waiver" as automatic up-charge of ten percent on a rental that was not part of "applicable sales and rental taxes" and that Home Depot did not disclose as a optional charge. See Pet., ¶¶ 4-5. Paragraphs 37 through 42 of the petition assert that as a result of this litigation, Home Depot changed its business practices relating to Damage Waivers during 2005 or 2006, and now uses a new version of the rental agreement which offers "optional" "Damage Protection" that is no longer automatically imposed on customers. The petition specifically limits the scope of its claims by stating, "This case does not involve any claim based upon the new rental agreement or about the optional "damage protection" Home Depot now offers. Pet., ¶ 42. The class allegations describe the class as, "All Home Depot customers who were charged a "Damage Waiver" in connection with a tool or equipment rental from a Home Depot retail store in Missouri during the relevant period." Pet., ¶ 43. It is clear to the Court

that plaintiff does not seek damages with respect to the new rental agreement or "Damage Protection" coverage.

As a result, defendant's calculation of plaintiff's compensatory damages from 1999 to the present is over-inclusive and cannot be accepted. Although Home Depot had the opportunity to provide the Court with actual revenue figures based on its sale of Damage Waivers, it did not do so. Thus, Home Depot fails to provide evidence to support its calculation of compensatory damages. The only reliable evidence presented is that (1) over 62,000 customers paid for the Damage Waiver in 2003, but there is no dollar figure offered to correlate with the 2003 Damage Waivers; and (2) Home Depot's damage-related revenue in 2005 was $426,073, but it is not clear whether this revenue was gained in whole or in part based on the sale of optional damage protection, as opposed to Damage Waivers.

Defendant's compensatory damage calculation therefore lacks the necessary detail required to establish the $5 million jurisdictional requirement, as it is based on vague and conclusory assertions that do not satisfy the preponderance of the evidence standard.

Defendant is correct that in determining the amount in controversy, both punitive damages and attorney's fees are considered. See Allison v. Security Ben. Life Ins. Co., 980 F.2d 1213, 1215 (8th Cir. 1992) (punitive damages) (citing Bell v. Preferred Life Assur. Society, 320 U.S. 238, 240 (1943)); Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992) (attorney's fees). A claim for punitive damages is scrutinized more closely than a claim for actual damages when determining the amount in controversy, however, "to ensure that Congress's limits on diversity jurisdiction are properly observed." Western Surety Co., 51 F.3d at 173 (citing Larkin v. Brown, 41 F.3d 387, 389 (8th Cir. 1994)).

Defendant contends that punitive damages of $4 million should be included in the amount in controversy, which is slightly less than three times plaintiff's estimated compensatory damages of $1.4 million. Defendant provided no evidence in support of its punitive damage calculation, but rather merely cites cases in which punitive damage awards in a single-digit multiplier of the actual damage award have been upheld. Because defendant has failed to present sufficient evidence to establish the compensatory damage amount by a preponderance of the evidence, the Court cannot determine whether the combination of compensatory and punitive damages and attorneys' fees will satisfy CAFA's $5 million jurisdictional threshold. As this Court has noted before, plaintiffs are often awarded significantly less than the amount they seek. See Nowak, 2007 WL 2454118, at *6.

Accordingly, the Court concludes that defendant Home Depot has failed to establish by a preponderance of the evidence that the amount in controversy meets CAFA's jurisdictional requirement. The Court rejects defendant's argument that plaintiff should be required to stipulate concerning her damages seeks to improperly shift the burden of proof on the issue of the amount in controversy from the defendant, the removing party. In the absence of another basis for the exercise of jurisdiction, the case must be remanded to the state court from which it was removed.

C. *Traditional Diversity Amount in Controversy*

Finally, with respect to traditional diversity jurisdiction, plaintiff argues that she does not seek injunctive relief and therefore defendant fails to prove that an amount in excess of $75,000 is in controversy on her claim alone.

In a case based upon this Court's diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a). The removing party must prove the existence of the jurisdictional minimum by a preponderance of the evidence. In re

<u>Minnesota Mut. Life Ins. Co. Sales Practices Litig.</u>, 346 F.3d at 831. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." <u>James Neff Kramper</u>, 393 F.3d at 833 (quoting <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1976)); <u>Burns v. Massachusetts Mut. Life Ins. Co.</u>, 820 F.2d 246, 248 (8th Cir. 1987) ("The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced.")

In the motion to remand, plaintiff asserts that she is not asking for injunctive relief at all. Plaintiff states that the only reference in the petition to injunctive relief is in paragraph 49(c), part of the "Class Allegations" section, which merely illustrates an example of when a class action is appropriate and cites the three alternative requirements for certification under Missouri law. Plaintiff states that paragraph 49(c) does not indicate she requests injunctive relief, and such a request would be contrary to the rest of the petition, which clearly states that Home Depot has already made satisfactory changes to its tool rental agreement and stopped the practice about which plaintiff complains. Plaintiff also notes that in the "wherefore" clauses under both counts of the petition, she lists the type of relief she is seeking but never requests injunctive relief. Plaintiff asserts that without injunctive relief, her claims will not come close to the $75,000 requirement for traditional diversity jurisdiction.

Defendant responds that plaintiff concedes the parties in this case are completely diverse, and does not challenge the assertions in its Notice of Removal and the Summers Declaration that it would cost Home Depot in excess of $75,000 to comply with an injunction requiring it to modify its tool rental program. Defendant asserts that according to paragraph 49(c) of the petition, plaintiff does seek injunctive relief, and notes that the prayer in the "wherefore" clauses of the petition includes

"other and further relief as the Court deems proper." Pet., ¶¶ 63, 68. Defendant contends that plaintiff is attempting to mischaracterize her own petition, because she would not have included paragraph 49(c) referring to "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" if she did not intend to seek such relief in this case, and cannot "simply explain away this express reference to injunctive relief as a mere 'illustration.'" Def.'s Mem. Opp. at 14-15. Defendant also asserts that, as with the issue of compensatory damages, plaintiff has not provided a binding stipulation she will not pursue injunctive relief at any point in this litigation.

The Court concludes, after a careful review of plaintiff's petition, that she does not seek injunctive relief in this action. The prayers for relief in the petition do not seek injunctive relief. The petition as a whole also indicates that plaintiff does not seek injunctive relief. As discussed above, plaintiff's claims are specifically limited to the time during which defendant's rental agreement contained a Damage Waiver, and the petition alleges that defendant changed its rental agreement in 2005 or 2006 to offer optional damage protection. The petition expressly states that it does not include claims concerning optional damage protection under the new rental agreement. Therefore, it is consistent that plaintiff has not included a prayer for injunctive relief in the petition, as the Damage Waiver that she challenges is no longer in use by the defendant and no injunctive relief would be appropriate. The Court agrees with plaintiff that paragraph 49(c) of the "Class Allegations" section merely lists the three alternative requirements for class action certification under Missouri law. See Mo. Sup. Ct. Rule 52.08(b)(1)-(3). This paragraph is therefore surplusage, which the Court may disregard. Because plaintiff does not seek injunctive relief, defendant has not met its burden to establish that an amount in excess of $75,000 is in controversy.

Assuming arguendo that plaintiff's petition does seek injunctive relief, the Court still does not have diversity jurisdiction over this action. Defendant has presented evidence demonstrating that it will incur losses in an amount exceeding $75,000 if plaintiff were to prevail in this action on a claim for injunctive relief. Plaintiff does not challenge this evidence.

The Eighth Circuit, however, follows the "plaintiff's viewpoint" in determining whether the amounts in controversy requirement in a removed diversity action is met. See Smith v. American States Preferred Ins. Co., 249 F.3d 812, 813-14 (8th Cir. 2001) ("Our own circuit precedent requires the district court to rely solely on the plaintiff's viewpoint in meeting the requisite amount."); Burns, 820 F.2d at 248 ("The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced."); Massachusetts State Pharm. Ass'n v. Federal Prescription Serv., Inc., 431 F.2d 130, 132 (8th Cir. 1970) ("The amount in controversy is tested by the value of the suit's intended benefit to the plaintiff."); Price v. Cybertel Cellular Tel. Co., 2007 WL 1445846 (E.D. Mo. May 14, 2007) (holding that the Eighth Circuit follows the "plaintiff's viewpoint" in determining whether the amount in controversy requirement in a diversity action is met; citing Smith); J.C. Corporate Mgmt., Inc. v. Resource Bank, 2005 WL 2206086, *4 (E.D. Mo. Sept. 12, 2005) (same).[4]

---

[4]The Western District of Missouri's contrary decision in Saab v. Home Depot U.S.A., Inc., 2006 WL 1877077, at **3-4 (W.D. Mo. July 6, 2006), on which defendant relies, is not persuasive. Although the district court in Saab held that defendant's cost of modifying its damage waiver practices established the existence of the jurisdictional minimum amount in controversy, the court did not address and does not appear to have considered the Eighth Circuit's direction to consider the amount in controversy from the plaintiff's viewpoint only.

The validity of this rule in the Eighth Circuit is beyond doubt. In Massachusetts State Pharm. Ass'n, the Eighth Circuit named and followed the "plaintiff's viewpoint rule," observing specifically that while "[t]here is some authority for the proposition that the amount in controversy is valued by the 'thing to be accomplished by the action' as to either the plaintiff or the defendant, whichever is the higher," id., 431 F.2d at 132 n.1 (citing Hedberg v. State Farm Mut. Auto Ins. Co., 350 F.2d 924,

In this action, plaintiff asserts that she does not seek or have any entitlement to damages in an amount exceeding $75,000, and defendant has failed to demonstrate otherwise. As such, from plaintiff's viewpoint, the value of the object of the litigation to plaintiff does not exceed $75,000. The Eighth Circuit measures injunctive relief by the value to the plaintiff of the right sought to be enforced. This Court is, of course, bound to follow Eighth Circuit precedent. Thus, despite the potentially significant cost to the defendant if injunctive relief were to be granted to plaintiff, the amount in controversy from the plaintiff's viewpoint is not sufficient to meet the jurisdictional threshold.

Because defendant has failed to prove by a preponderance of the evidence that, from the plaintiff's viewpoint, the amount in controversy exceeds $75,000, this Court lacks subject matter jurisdiction over this action, and the matter should be remanded to State court.

**Conclusion**.

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over this action because defendant has not met its burden to establish that the jurisdictional minimum amount in controversy exists under either the Class Action Fairness Act or traditional diversity jurisdiction requirements.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand this matter to state court is **GRANTED**. [Doc. 11]

---

928 (8th Cir. 1965), and <u>Hatridge v. Aetna Cas. & Sur. Co.</u>, 415 F.2d 809, 814-16 (8th Cir. 1969)), "[i]n neither of these cases did we apply the defendant's standpoint test." <u>Id.</u>, 431 F.2d at 132 n.1. The Eighth Circuit then concluded that it was "of the view that the 'plaintiff's viewpoint rule' is the only valid rule." <u>Id.</u>

**IT IS FURTHER ORDERED** that defendant's motion to dismiss remains pending for resolution by the state court following remand.

An appropriate order of remand will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  5th  day of September, 2008.